IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Frederick E. Johnson,

    Plaintiff,

  v.                              Case No. 2:15-cv-86

Gary C. Mohr, et al.,

    Defendants.

## ORDER

    Plaintiff, a state inmate, brings the instant action pursuant to 42 U.S.C. §1983, asserting claims arising out of a prison disciplinary proceeding against him while he was incarcerated at the London Correctional Institution. On February 11, 2015, the magistrate judge filed a report and recommendation on the initial screen of plaintiff's complaint pursuant to 28 U.S.C. §1915A, which requires the court, "in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," to dismiss a complaint that fails to state a claim upon which relief may be granted. 28 U.S.C. §1915A(a)-(b)(1). The magistrate judge concluded that plaintiff's complaint fails to state a claim upon which relief can be granted, and recommended that this action be dismissed. See Doc. 5, pp. 6-7.

    This matter is before the court for consideration of plaintiff's objections (Doc. 9) to the magistrate judge's report and recommendation. If a party objects within the allotted time to a report and recommendation, the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1); see also Fed. R. Civ. P. 72(b). Upon review, the Court

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1).

As the magistrate judge correctly explained, 28 U.S.C. §1915(e) requires <u>sua sponte</u> dismissal of an action upon the court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted. <u>Grinter v. Knight</u>, 532 F.3d 567, 572 (6th Cir. 2008). Courts conducting initial screens under §1915(e) apply the motion to dismiss standard. <u>See</u>, <u>e.g.</u>, <u>Hill v. Lappin</u>, 630 F.3d 468, 470-71 (6th Cir. 2010) (applying Fed. R. Civ. P. 12(b)(6) standards to review under 28 U.S.C. §§1915A and 1915(e)(2)(B)(ii)).

Courts ruling on a motion to dismiss under Rule 12(b)(6) construe the complaint in a light most favorable to the plaintiff, accepting all well-pleaded allegations in the complaint as true, and determining whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Bishop v. Lucent Techs., Inc.</u>, 520 F.3d 516, 519 (6th Cir. 2008). To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." <u>Mezibov v. Allen</u>, 411 F.3d 712, 716 (6th Cir. 2005).

Plaintiff has asserted claims against Gary C. Mohr, the director of the Ohio Department of Rehabilitation and Correction ("ODRC"); Warden Timmerman-Cooper, the warden at the London Correctional Institution; Mathew Chrisler, an investigator at the

2

institution; Lt. Sabulski, chairman of the institution's Rules Infraction Board ("RIB"); Jane Doe, an RIB secretary; and Brian Wittrup, chief of ODRC's Bureau of Classification. Plaintiff alleges in his complaint that he was charged in a prison disciplinary proceeding with raping another inmate. He claims that Chrisler filed a false conduct report. He further claims that he was denied procedural due process during his disciplinary hearing by Sabulski and Doe, including the denial of the opportunity to call witnesses. Plaintiff also alleges that he was denied due process during his appeal by Timmerman-Cooper, who did not allow him to review camera footage or to take a lie detector test. He further contends that Timmerman-Cooper got upset and denied his appeal, and that she had the staff destroy all of plaintiff's property in retaliation. Plaintiff asserts that as a result of the disciplinary proceedings, he was transferred to a maximum security segregation unit within the prison, and that he was incarcerated in maximum security for over a year. Plaintiff contends that Chief Wittrup has refused to lower his security level. Finally, plaintiff alleges that Director Mohr should be held liable as the supervisor of the other defendants.

The magistrate judge correctly concluded that plaintiff's due process claims concerning the prison disciplinary proceeding fail to state a claim for relief. The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property, and those who seek to invoke its procedural protection must establish that one of these interests is at stake. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). In his objections, plaintiff reiterates his complaints concerning the disciplinary

hearing and his allegations that the defendants brought false charges against him, failed to follow prison regulations at the hearing, and denied him a fair hearing. However, prisoners have narrower liberty interests than other citizens. Grinter, 532 F.3d at 573. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin v. Conner, 515 U.S. 472, 485 (1995). A prisoner has no constitutional right to be free from false accusations of misconduct. Jackson v. Hamlin, 61 F.App'x 131, 132 (6th Cir. 2003). The failure of prison officials to follow proper procedures is also insufficient to establish an infringement of a liberty interest under the Due Process Clause. Grinter, 532 F.3d at 574, 576 (citing Olim v. Wakinekona, 461 U.S. 238, 250 (1983)).

Plaintiff alleges in his complaint that he was placed in maximum security segregation pending the completion of the disciplinary investigation. Doc. 1, p. 5. He further contends that Wittrup changed his security level from minimum security to maximum security, and that he had been in maximum security for over a year. Doc. 1, pp. 18-19. Plaintiff clarifies in his objections that he was held in isolation at the London Correctional Institution from July 17, 2013, to November 24, 2013, and was then transferred to the Southern Ohio Correctional Facility, a maximum security facility in Lucasville, Ohio, where he was held for thirteen months. Doc. 9, p. 9-11.

In Sandin, the Supreme Court held that liberty interests "will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the

4

ordinary incidents of prison life." The Constitution does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. Wilkinson, 545 U.S. at 221. Plaintiff had no liberty interest arising from the Due Process Clause which would prevent his transfer from a low security facility to a maximum security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose". Meachum v. Fano, 427 U.S. 215, 225 (1976). Likewise, an increase in security classification does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification. Harbin-Bey v. Rutter, 420 F.3d 571, 577 (6th Cir. 2005).

Plaintiff's placement in administrative segregation pending the outcome of his disciplinary hearing did not infringe on a liberty interest. See Sandin, 515 U.S. at 486 ("discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). Plaintiff contends in his objections that the prison recreation times at the London Correctional Institution were from 6:00 a.m. to 10:30 a.m., 11:00 a.m. to 3:30 p.m. and 4:30 p.m. to 9:00 p.m. Doc. 9, p. 18. He alleges that when he was in segregation and in the maximum security facility, he was on lock-down for twenty-three hours per day, with only one hour permitted for recreation. Doc. 9, p. 19. This information is insufficient to show that the conditions of plaintiff's confinement posed an

5

atypical or significant hardship. See Bradley v. Evans, 229 F.3d 1150 (table), 2000 WL 1277229 at *5-7 (6th Cir. Aug. 23, 2000)(prisoner who was held in administrative segregation for fourteen months as a disciplinary measure had not shown that he was subjected to an atypical or significant hardship); see also Sandin, 515 U.S. at 486 (noting that inmates in the general population also experienced significant amounts of lockdown time, and that the degree of confinement in disciplinary segregation was not excessive).

Plaintiff also alleges in his objections that his release date was extended thirty-six months by the parole board due to the findings in his disciplinary proceeding. However, a liberty interest may be created on behalf of an inmate only where the state's action "will inevitably affect the duration of his sentence." Sandin, 515 U.S. at 487. Findings of misconduct, even findings that could lengthen a prison sentence, do not implicate a protected liberty interest so long as the parole board retains discretion to release a prisoner based on a myriad of considerations. Nali v. Ekman, 355 F.App'x 909, 912 (6th Cir. 2009)(citing Sandin, 515 U.S. at 487). Where an inmate has no substantive liberty interest in parole, the procedures used to deny him parole cannot be challenged. Settle v. Tennessee Dep't of Correction, 487 F.App'x 290, 290-91 (6th Cir. 2012).

Ohio law does not create a liberty interest in parole eligibility or release on parole. Jergens v. State of Ohio Dep't of Rehabilitation and Corrections Adult Parole Authority, 492 F.App'x 567, 570 (6th Cir. 2012)(citing Michael v. Ghee, 498 F.3d 372, 378 (6th Cir. 2007)). Ohio has a completely discretionary

6

parole system, see Michael, 498 F.3d at 378, and the parole board considers a lengthy list of factors in deciding whether to release an inmate on parole, see Ohio Admin. Code §5120:1-1-07. An inmate's eligibility for parole at a certain time under a discretionary parole system is not an "atypical and significant hardship" and does not implicate a liberty interest. Michael, 498 F.3d at 378.

Finally, to the extent that plaintiff seeks to impose liability on Director Mohr or other defendants based solely on their supervisory roles, the court notes that §1983 liability cannot be imposed under a theory of respondeat superior; rather, proof of personal involvement is required to hold a supervisor liable. Grinter, 532 F.3d at 575. The mere denial of administrative grievances or the failure to intervene by overturning a disciplinary finding does not subject supervisors to liability under §1983. Id. at 576.

The court concludes that plaintiff's due process claim fails to state a claim for which relief may be granted, and plaintiff's objections regarding his due process claims are denied.

The court notes, however, that plaintiff has also asserted a First Amendment retaliation claim against Warden Timmerman-Cooper for the destruction of his property in retaliation for pursuing an appeal of the disciplinary hearing. That claim was not specifically addressed by the magistrate judge. To state a First Amendment claim for retaliation, plaintiff must allege that: (1) he engaged in protected conduct; (2) an adverse action was taken against him, and (3) there is a causal connection between the first and second elements, i.e., that the adverse action was motivated at

7

least in part by the protected conduct.  LaFountain v. Harry, 716 F.3d 944, 948 (6th Cir. 2013).  The destruction of property can constitute an adverse action.  LaFountain, 716 F.3d at 948-949.  Plaintiff has not alleged sufficient facts to implicate any defendant other than Warden Timmerman-Cooper in the alleged destruction of his property.  However, plaintiff may proceed against Warden Timmerman-Cooper on his First Amendment retaliation claim.

In accordance with the foregoing, the report and recommendation (Doc. 5) is adopted in part.  Plaintiff's claims are dismissed with the exception of plaintiff's First Amendment retaliation claim against Warden Timmerman-Cooper alleging the destruction of his personal property, which will be allowed to proceed.  Defendants Mohr, Chrisler, Sabulski, Jane Doe, and Wittrup are dismissed as parties.  Plaintiff's objections (Doc. 9) are denied in part, and granted in part solely with respect to the retaliation claim against Warden Timmerman-Cooper.  The United States Marshal's Service is directed to complete service of the complaint on Warden Timmerman-Cooper.


Date: April 3, 2015                 s/James L. Graham
                                    James L. Graham
                                    United States District Judge

8